NORMAN J. EMMONS, *Plaintiff in Error*,

*vs.*

JOSEPH C. DOWE, *Defendant in Error.*

ERROR TO THE MILWAUKEE CIRCUIT COURT.

In replevin, under the plea of *non detinet*, the defendant may give evidence of title in himself, because such evidence would tend to disprove the plaintiff's averment of title in himself.

The plea of *non detinet* in this case necessarily put in issue the property of the plaintiff in the goods ; but this property does not necessarily imply absolute and exclusive ownership. Right to the possession and dominion of the goods and chattels for the time, is all that is essential.

A judgment in replevin, upon the plea of *non detinet*, is conclusive only as to the plaintiff's right of possession.

When, in replevin, under the plea of *non detinet*, the jury found that the defendant " did unlawfully detain the goods," and was silent as to the property therein. and the judgment was " that the plaintiff do have and retain the goods " : *Held*, that the only matter here adjudicated was the right to retain and possess the goods merely, at the time ; and that the ownership of the goods was not concluded thereby.

Where A., B. and C., not being partners, are summoned as garnishees, the suit against them is several and not joint ; a verdict or judgment against one is not binding upon the other, unless all shall join in their answers, on one issue to be tried.

Where the plaintiff held a mortgage upon an entire stock of goods, and assigned to G. & Co., with a right of priority of payment, $3,900 of the mortgaged monies mentioned therein : *Held*, that G. & Co. were authorized by the assignment to dispose of so much of the mortgaged goods as might be necessary to pay said sum of $3,900, and expenses, and no more ; and that after the said sum should be paid or satisfied, the assignor was entitled to the return of the remainder of the goods.

Under such an assignment, the assignees were not authorized to dispose of all the goods unless necessary to the satisfaction of the amount assigned to them.

The transfer of any distinct part of an indebtedness secured by mortgage, carries with it the mortgage security *pro tanto*.

An estoppel *in pais* or by the conduct of a party, may be created as effectually by the acts or conduct of the agent as of the principal. But such acts of the agent, to conclude his principal, must be within the scope of his authority.

This was an action of trover, for a quantity of merchandise. The declaration was in the common form ; plea not guilty. The trial was had at the     term

of the Circuit Court for Milwaukee county, which
resulted in a verdict against the plaintiff in error for
$5,000 and costs.

The bill of exceptions discloses the following case:
On the trial, the plaintiff below offered and gave in
evidence a bill of sale from Crampton & Osborne to
the plaintiff, dated September 10th, 1851, of certain
goods, which were admitted by the defendant below
to be the same as those sought to be recovered for in
this suit. The plaintiff then called Jonathan Cramp-
ton as a witness, who testified that he is acquainted
with the parties to the bill of sale, and that he assist-
ed in making out the schedule annexed thereto, and
that the same was a correct schedule of the goods
then in the store of Crampton & Osborne, on the cor-
ner of East Water and Wisconsin streets, in Martin's
block, in Milwaukee; that Crampton & Osborne then
had possession, and they gave possession to Dowe.
The bill of sale was made at the date, and possession
given the same day to the plaintiff. The witness was
present a share of the time when Dowe was negotia-
ting with Ray for the purchase of them; plaintiff
sold to Ray the same stock, and all except a few sold
while the plaintiff had them. Witness purchased all
the stock himself personally, which consisted of a
general retail stock of staple and fancy goods; all
had been bought within two years; they sold them
to the plaintiff for $8,928.62. This was New York
cost, less twenty-five per cent. It was low—less than
the goods were worth, if a man wanted to keep on in
business. Witness thought the goods well worth the
money.

The plaintiff then called for, and the defendant
produced, a chattel mortgage, executed by James M.

Ray to the plaintiff, which was given in evidence. The schedule annexed, and forming part of the mortgage, was admitted to be of the same goods purchased by Dowe from Crampton & Osborne, and now sought to be recovered for in this suit. The mortgage purported to be for the suring of the payment of certain moneys thereinafter mentioned, and for the consideration of one dollar, and was conditioned that if the said Ray, party of the first part, shall pay to Dowe, the party of the second part, his executors, &c., the sum of $3,900, according to the tenor of two certain drafts, one of even date herewith, for the sum of $5,-000, to the order of Joseph C. Dowe, drawn by the said Ray on John F. Coudry; the other said draft, dated Panama, July 10, 1851, for $3,900, drawn by Garrison & Fritz to the order of James M. Ray, Jr., and accepted by Martin Oliver & Co.; and also for the payment of such further notes to be given, at six months, for any surplus of the stock of goods above mentioned, and this day sold to me by the said Dowe, and for which notes are to be given as soon as the amount shall be ascertained, then these presents, and everything herein contained, shall be void. And the said party of the first part, for himself, executors, &c., does covenant and agree with the party of the second part, his executors, &c., that in case default shall be made in payment of the said sum above mentioned, or if the said party of the second part shall at any time deem himself in danger of losing the said debt, or any part thereof, it shall be lawful for, and the said party of the first part hereby authorizes and empowers, the said party of the second part, his executors, &c., with the aid and assistance of any person or persons, to enter, and come into and upon the dwelling-

house and premises of said party of the first part, or

in any other place or places, as the said goods and chattels are or may be placed or held, and take and carry away the said goods and chattels, either before or after the expiration of the time aforesaid, and to sell and dispose of the same for the best price they can obtain, after the like notice as by law is required by constable's sales, and out of the money to retain and pay the said sum above mentioned, with the interest, and all expenses thereon, rendering the overplus, if any, unto the said party of the first part, his executors, &c.

And until default be made in the payment of the aforesaid sum of money, the said party of the first part to remain and continue in the peaceable and quiet possession of the said goods and chattels, and the full and free enjoyment of the same, unless the said party of the second part, his executors, &c., shall choose to demand the same ; and until such demand be made, the possession of the said party of the first part shall be deemed the possession of an agent or servant, for the sole benefit and advantage of his principal, the said party of the second part.

Sealed, &c., Sept. 18, 1851. Signed by Jas. M. Ray, Jr.

The plaintiff below then read in evidence a written endorsement on said mortgage, as follows :

"For and in consideration of the sum of $3,900, to me in hand paid by John A. C. Gray & Co., of the city of New York, the receipt whereof is hereby confessed, I hereby assign and set over unto the said John A. C. Gray & Co., with the right of priority of payment, the sum of $3,900 of the within mortgage moneys, being the amount of the draft of Garrison &

Fritz, accepted by Martin Oliver & Co., and described in the condition of the within mortgage, and which draft has been turned over to the said John A. C. Gray & Co. In witness whereof, I have hereunto set my hand and seal the 18th day of Septr., 1851.

(Signed) "Jos. C. Dowe."

It was admitted that the said mortgage and assignment were, at the time of the execution of said assignment, delivered to Messrs. Emmons & Van Dyke, as the attorneys cf said Gray & Co.

The witness (Crampton) then further testified that plaintiff had possession of the goods at a certain time after the date of said mortgage ; he took possession under the mortgage. Witness was acting for Ray, and the plaintiff demanded the goods of witness, and witness gave them up. After Ray's purchase, they took an account of stock for Ray, and when that was finished, he left for New York, and the next day plaintiff demanded possession of the goods, and witness gave them up, and the plaintiff took possession. Soon after that the goods were removed to Wall's auction store, on East Water street.

Lester H. Cotton, the U. S. marshal, testified that the goods were removed by him to Wall's auction store, by the direction of the defendant below. The whole stock of goods was removed by defendant's direction ; that he took the goods under a writ of replevin issued out of the District Court of the United States ; he thought he retained possession of the goods at Wall's from six to nine days after he took them there ; that he then turned them over to Wall by direction of Emmons, and has not had possession since.

Caleb Wall, the auctioneer, testified that the goods

DEC. TERM
1853.

Emmons
vs.
Dowe.

were taken to his store, and were kept in store for the marshal some eight or ten days, when they were delivered over to him for Emmons & Van Dyke, and were, by the direction of Emmons, by him sold at auction ; that the gross amount of the sale was some $6,200 ; that they were all sold in large parcels ; that the witness inquired of the defendant whether he should sell the goods ; he said then he could not tell, but to go on and sell enough to pay Gray's claim, some $3,900. The witness had tried to purchase the goods. Waldo was once there with the defendant, as he understood, as the agent of Dowe, and after Waldo was there, witness was told to go on and sell the balance. Witness tried to purchase of Waldo, as plaintiff's agent. Waldo was there repeatedly, and never made any objection to the selling. When witness was trying to purchase the goods of Waldo, he agreed that in case of sale, $3,900 should go to defendant for Gray & Co. Of the proceeds of the goods, $3,900 were paid to Emmons & Van Dyke; $2,200 or $2,300 to McGregor & Tenney, and the balance for expenses. He further testified as to other acts of Waldo in regard to his agency.

Other witnesses gave evidence as to the value of the goods, which ranged from $9,000 to $12,000.

Osborne, of the firm of Crampton & Osborne, testified that they took the invoice to see whether they were making or losing ; he had been trying to sell out for Crampton ; about ten days after, they sold to Dowe for $1,000 cash, and notes at nine, twelve and eighteen months, and he was very anxious to get out of the business. The offer of Dowe was the best they could obtain.

The plaintiff then offered in evidence a paper exe-

cuted cotemporaneously with the mortgage and assignment, by John A. C. Gray & Co. to the plaintiff, in the words following :

"Whereas, Joseph C. Dowe has this day turned out to us a certain draft of July 10, 1851, drawn by Garrison & Fritz, of Panama, to the order of James M. Ray, Jr., and accepted by Martin Oliver & Co., and payable in eight months from the date thereof, and assigned to us as security, with the right of priority of payment, that the acceptance of said draft is genuine, so much of a certain chattel mortgage, executed by James M. Ray, Jr., to said Joseph C. Dowe ; now we therefore hereby agree to and with the said Dowe that as soon as we can, and within a reasonable time are enabled to satisfy ourselves that the said acceptance of the said Martin Oliver & Co. is genuine, and that they are responsible, we will receipt to said Dowe so much on account of the said mortgage moneys.

"Dated Sep. 18, 1851."

Here the plaintiff rested his case.

The defendant gave in evidence the original record of a judgment in a replevin suit, recovered in the District Court of the United States for the district of Wisconsin, wherein John A. C. Gray & Co. were plaintiffs, and Joseph C. Dowe was defendant. The suit was instituted the 24th of September, 1851, and final judgment rendered therein on the 27th day of January, 1852. Dowe was personally served with process, and appeared and defended the action, and it was admitted that the suit was to recover possession of the goods in controversy in this suit. It appeared from the record, that the action was in the *detinet*, for the wrongful detention of the goods, and that the de-

fendant pleaded the general issue, with notice of
property in the goods in said defendant Dowe. The
verdict was as follows:

"That the defendant did unlawfully detain the
goods and chattels and property from the said plaintiffs, in manner and form as the said plaintiffs have
declared against him."

That the judgment of the court thereon was as follows :

"It is considered and adjudged by this court now
here, that the said plaintiffs do have and retain the
goods and chattels and property mentioned and described in their declaration, as the same have been
delivered to them upon the said writ of replevin."

It was also admitted, that in the replevin suit aforesaid, the goods were replevied and delivered to the
plaintiff therein, in the usual course of proceeding,
under chapter 119, of Revised Statutes of Wisconsin.

The defendant further offered in evidence the record and proceedings in a suit in assumpsit, in the District Court of the United States, wherein Cyrus W.
Loder and others were plaintiffs in attachment against
Crampton & Osborne, and in which the said Joseph
C. Dowe and said Caleb Wall and said Emmons were
summoned as garnishees, pursuant to chapter 112 of
the Revised Statutes; from which it appeared that
Crampton & Osborne were served with process, and
final judgment rendered against them as principal defendants, on the 8th January, 1852, for the sum of
$1,796.52, and that the said garnishees appeared and
answered.

The defendant then offered a further record of the
proceedings against Wall, as garnishee in the suit
aforesaid against Crampton & Osborne; from which

it appeared that the attachment and garnishee process was served upon Wall before any of the goods were sold by him, as testified to by him. The defendant also offered, in connection with said judgment and proceedings, evidence tending to show that said Dowe had notice of the pendency of the same, and that he appeared and took upon himself the defence of the proceedings against Wall ; to all of which the plaintiff objected, upon the grounds—1st. That Dowe was not a party ; 2d. That the U. S. Court had no jurisdiction of the garnishee process ; 3d. That Dowe was not concluded by a judgment against Wall, nor against himself, in such proceedings. But the judge admitted the evidence, subject to such objections.

It was also proved that Waldo and C. K. Watkins appeared as counsel, and defended in the trial of the issue against Wall, against whom a verdict had been rendered, and made and argued a motion for a new trial ; which motion was overruled.

A large amount of evidence was introduced on the part of the defendant below, intended to show that Waldo was in fact the agent of Dowe, and also that he held himself out and acted as such agent with the knowledge of Dowe.

It also appeared in evidence, that from the 20th to the 22d of September, a number of telegraphic dispatches were sent to and from New York, to ascertain the genuineness of the aforesaid draft, and its acceptance by Martin Oliver & Co., from which it appeared that the parties were satisfied that the said draft was not genuine. This is substantially the evidence disclosed by the bill of exceptions, deemed to be sufficiently in detail for a comprehension of the points made by the parties, and the charge of the court.

At the close of the testimony, the counsel for the defendant argued the case to the court and jury, and made the following points to the court, and asked and insisted that the court should charge the jury in accordance therewith, viz:

1. That the verdict and judgment in the replevin suit of Gray and others *vs.* Dowe, was conclusive upon the question of property in the goods.

2. That it appeared that the question of title or property in the goods here claimed had been tried and passed upon in the said replevin suit, and that then the verdict and judgment therein for the plaintiff would be a bar to a recovery in this suit.

3. That judgment in said replevin suit had at least settled the question of the right of possession to the goods replevied, and that the plaintiff could not maintain trover so long as the right of possession was thus established against him.

4. That if the defendant's possession was lawful, plaintiff could not recover without proof of a demand upon defendant for the goods before suit brought.

5. That Dowe, the plaintiff, was a privy in interest or estate with the parties to the attachment and garnisheed proceedings given in evidence, and would be therefore concluded by the judgment therein against Wall.

6. That evidence showing Wall in possession under the chattel mortgage from Ray, and showing the present plaintiff claiming under the same mortgage, and showing the defendant acting under the same mortgage as the agent of Gray & Co., would connect the parties as privies so as to make the judgment against Wall evidence against the present plaintiff.

7. That if Dowe was a privy in interest with Wall,

and those under whom he acted, and had notice of the pendancy of the suit against Wall, the judgment therein would be evidence against him.

8. That if Dowe appeared and took upon himself the defence of the suit against Wall, personally or by counsel, he would be barred the same as though a party to the record.

9. That Dowe being summoned with Wall as garnishee, and appearing and answering, would make him a party.

10. That if the question of title to the goods in Wall's hands, and which are claimed as having been converted by the present defendant, was at issue in the trial against Wall, then a judgment against Wall therein would be evidence against and conclude Dowe, provided he was as claimed by defendant, a party or privy.

11. That if the goods here claimed by the plaintiff were taken from the defendant or his agent by process of law, and whilst defendant's possession was lawful as regarded the plaintiff, such taking would protect the defendant, and might be answered in defence in this suit.

12. That if the jury found that Waldo, as the agent of Dowe, had assented to a sale of all the goods by Wall, that then an action of trover could not be maintained, based on such sale as a conversion.

13. That if the plaintiff, by himself or his authorized agent, had stood silently by, and seeing and knowing of the intended sale of the goods, and made no objection and given no dissent to the sale, and thereby led the defendant to the belief of the plaintiff's acquiescence, he would afterwards be estopped from setting up such sale as wrongful.

DEC. TERM 1853.

Emmons
vs.
Dowe.

14. That under the power of sale contained in the mortgage given in evidence by the plaintiff, the defendant, as the agent and attorney of Gray & Co., had power to sell all the goods.

When the arguments to the court and jury were closed, and the parties rested their case, the judge asked the counsel if they had any written points to present, on which they wished to ask the charge of the court to the jury; and the parties respectively answered that they had none, the defendant's counsel remarking that they had already fully argued their points to the court, and nothing is intended by the insertion of the foregoing points in this bill, at the request of the counsel for the defendant, further than to show that such points were made by the defendant's attorneys, and argued to the court in the usual way·

Whereupon the judge of said court did charge and instruct the jury as follows:

This is an action of trover brought by the plaintiff Dowe to recover the value of certain goods bought by him of Crampton & Osborne; sold by him to one Ray; resumed under a chattel mortgage from Ray, and finally put into the hands of Caleb Wall, and by him disposed of.

There is no dispute, I apprehend, that Wall had the goods; that he sold enough to pay $3,900 to J. A. C. Gray & Co., and that he paid, or delivered, the balance in pursuance of a judgment of court. At all events, Wall had the goods, and converted them; and the question is: first, Had the plaintiff a title to them? and second: Has he parted with, or lost, his title to the goods?

In the first place, I have no hesitation in saying that the plaintiff did make out his title to the goods. The

Dec. Term
1853.

Emmons
vs.
Dowe.

bill of sale from Crampton & Osborne, and the mortgage from Ray—both executed to the plaintiff—are sufficient to establish a *prima facia* right to recover in this suit. This being established—provided you believe the evidence—it throws on the defendant the necessity of showing a right in himself.

The defendant claims that he has made out such a defence. First—by that which is a defence in fact; and second, by title in law—depending on documents and proofs produced in evidence. First, as to the defence in fact. The defendant claims that, after the goods were placed in his possession by the United States Marshal, he was authorized by Dr. Dowe to sell the goods; not only to sell enough to satisfy the claim of Gray & Co., but to sell the balance. It is not claimed that Dowe personally gave this authority, at least not as to the balance; but that Mr. Waldo, the witness in this case, gave the authority, as the agent of Dowe, and with proper authority from Dowe.

It is claimed: 1st, that Waldo directly and expressly requested, agreed or consented, that Emmons should have the goods sold by Wall; and 2d, that Waldo, knowing of Emmons' intention to sell, and seeing the sale by Wall going on, by his silence, or by his omission to dissent, gave consent; and that Dowe is bound by it. In order to make out the first branch of the case, the defendant must show that Waldo was Dowe's agent, in point of fact, and had authority from Dowe either generally to sell these goods, or particularly to dispose of them by a sale through Wall. There is much evidence on this branch of the case, and it becomes your duty to examine it carefully, and determine whether Waldo was so permitted or authorized to act by Dowe, and so become

his agent for the sale of the goods. If you do not
find that he was so authorized to act, then any direc-
tion or permission which he may have given to sell
the goods, no matter how express or explicit, would
not bind Dowe. But if he was in fact authorized by
Dowe to sell the goods, then any agreement or direc-
tion on his part would be the agreement and direction
of the principal, and would bind him.

But, second ; it is contended that even if no express
authority was given by Waldo to Emmons, or to
Wall, to sell the goods, in the manner he did, yet that
Waldo, being the agent of Dowe, knew of the sale,
and by his silence, or apparent consent, bound Dowe.
There is no doubt but that when the owner of prop-
erty stands by and sees another person selling it un-
der a claim of right, and neither says or does say
anything, to assert his own title to the goods, he can-
not sue the seller as a wrong doer, he is presumed to
assent by his silence. This is a conclusion of law
from his conduct. Such a conclusion of law may be
drawn from the acts of an agent, under like circum-
stances, but not necessarily. It will depend somewhat
upon the character of the agency. If the owner of
property residing in the place, should authorize or
request another to effect a sale of it, in any particular
manner ; and if the agency is special and not general ;
if it does not give the agent the whole and sole con-
trol and disposition of the property ; in such case, the
mere silence of the agent, when some third person
was selling the property, although he knew of the
sale and saw it going forward, would not raise the
same conclusion of assent, as if the owner himself did
the same thing. He might not know but the owner
had given authority for the sale. But if the agency

was general and gave exclusive control of the property:—as, if, for instance, a lot of goods or an individual article, were sent here from New York, or some distant place, and put into the hands of one of our citizens, with directions to hold, sell and receive the proceeds, I should think, in such a case, the agent stood in the place of the owner; and if he stood by and saw some other person disposing of the property and did not forbid the sale, or assert the title of his principal, such conduct would bind the principal and would authorize the legal presumption of assent. You will take the evidence applicable to this point, and will determine whether in any of the ways I have mentioned, the agency of Waldo was establisLed, and whether he so acted as to bind his principal.

But again: The defendant claims another ground of defence, distinct from any assent of Dowe, express or implied. He claims:

1st. That he acted, in the care and disposition of the goods as the agent and attorney of John A. C. Gray & Co.

2nd. That Gray & Co. were assignees of the mortgage from Ray to Dowe, and had certain rights under it.

3rd. That the judgment (of the Dist. Court of the U. S.) in replevin, established Gray & Co.s' right to the property in, as well as the possession of the goods; and that by virtue of such right, he placed the goods in Wall's hands.

4th. That after the goods were so placed in Wall's hands, the defendant as agent of Gray & Co., caused a sale to be made in pursuance of the mortgage, so far as to pay the $3,900.

5th. That before any sale of the goods, Wall was

garnisheed by Loder & Co., creditors of Crampton & Osbolne, who were plaintiffs in an attachment suit in the U. S. Court, and that he paid, or delivered the goods in pursuance of a judgment of the court, except the amount sold to pay Gray & Co.

Let one go over these grounds of defence.

In the first place, there is no question of defendant's right to act for Gray & Co., to claim the benefit of their rights in the premises. You may if the proof warrants it, regard the defendant and Gray & Co. as one in right, as far as Emmons interfered with the goods.

Second. Gray & Co. claim under the assignment of the chattel mortgage and the judgment in replevin. By the judgment in replevin, Gray & Co. became the lawful possessors of the goods, with such rights only as the assignment conferred. It has been clearly shown here, that the whole right of Gray & Co., as plaintiffs in the replevin suit, grew out of the assignment. And, by the assignment, Gray & Co. got the same right to sell, to the extent of the $3,900 and expenses, as Dowe the assignor had. Much has been said here about the relation of the parties. The whole of it was this. Gray & Co. by the assignment from Dowe, became the mortgagee of Dowe, who was, both before that, and after that, the mortgagee of Ray. For the purposes of the assignment, Gray & Co. could hold the mortgage and the goods, and sell under the mortgage and in pursuance of it, so much of the goods as might be necessary to pay the debt of $3,900, the expenses and no more. Subject to this right, Dowe still owned the mortgage and the goods, as the mortgagee of Ray. But, the right of Gray & Co. to sell, depended upon two contingencies. 1st. notice must

w

have been given, in pursuance of the power to sell in the mortgage. It was to be "like notice, as is by law required for constable sales." If the defendant justifies his sale under the mortgage, he must prove that the notice was so given. And 2nd. Before Gray & Co. could sell under the mortgage, they must have returned, or offered to return the draft of $3,900, held by them as collateral security. Unless you are satisfied that Gray & Co. did restore, or offer to restore that draft to Dowe, within a reasonable time after they took it, they could not hold the money secured by the mortgage. And a reasonable time is such time as a business man would reasonably have required to ascertain whether it was genuine, and whether the drawers and acceptors were responsible. The proof on that subject is before you.

Again. The defendant has made proof of a judgment in the U. S. Court against Caleb Wall, as garnishee. That judgment amounted to $2,100; and it is claimed to be a bar to the recovery by the plaintiff, of any part of the goods in question; more especially perhaps of the balance after the sale to make the 3,900 dollars. It seems, from the proof, that the garnishee process was served on Wall, before any of the goods were sold. Had he retained the goods, and passed them over, in pursuance of the statute or the judgment of the court, in that proceeding, I should hold him not liable to an action in trover for the property so passed over. But, by selling the goods without the direction or authority of the court, and converting them into money, in his own time and way, or in the manner in which he did, he precludes himself from setting up the judgment of the court in this case. And, the right of the defendant in this case, is

that of Wall, so far as he justifies under that judgment.

You will observe that all of these requisites; the giving of notice of sale; the return of the Draft, and the compliance with the law, in the garnishee proceeding, go to the defendant's right to sell any part of the goods—as well the 3,900 dollars, as the balance. But, if the plaintiff Dowe, by his agent, or otherwise, gave the defendant authority or permission to sell, a strict compliance with the mortgage, was not necessary—it was, in such case, waived.

And thereupon, the counsel for the defendant did then and there except, to all and so much of the said charge as relates to the return of the draft for 3,900 dollars; and also, to all, and so much of said charge as relates to the liability of defendant for any part of the goods sold by Wall, over and above those sold to make the 3,900 dollars and expenses; which exceptions were then and there noted by the Court.

On the following day, at the opening of court, and before the Jury, in this case, came into court with their verdict, the counsel for defendant came into court, and asked leave to except to the entire charge of the court to the jury in addition to the exception already taken; of which the judge then and there made note—and remarked to counsel that consent was given on his part, so far as he had a right to do so.

LEVI HUBBELL. [Seal.]

*Emmons & Arnold*, for plaintiff in error.

I. The Circuit Judge erred in his instructions to the jury upon the subject of Waldo's agency.

This was palpably wrong. The question should have been whether Waldo was *apparently* clothed

with full authority; or, in other words, whether Dowe had so permitted him to act, or held him out as competent, as to induce third persons to believe him authorized to dispose of the goods. *Story on Agency*, sections 93, 94, 95, 97, 127, 130, 133; *id. p.* 144, note 1; *id. p.* 150, note 1; *Pickering vs. Burk*, 15 *East.* 42; *Williams vs. Mitchell*, 17 *Mass.* 98; *Lightbody vs. N. A. Ins. Co.*, 23 *Wend.* 18; *Dunlap's Paley on Agency*, 168; 15 *East.* 409, *per Le Blanc and Bailey, justices; N. R. Bank vs. Aymar*, 3 *Hill*, 207, *per Cowen, J.; Com. Bank Buffalo vs. Cartwright*, 23 *Wend.* 360.

II. The Circuit Judge erroneously instructed the jury in answer to our 13th point, that the plaintiff was estopped from alleging the sale to be wrongful, if he, by himself or his authorized agent, had stood by in silence and seen the sale going on, and thereby led the defendant to the belief of plaintiff's acquiescence.

The general doctrine contended for was conceded by the court below—but a distinction endeavored to be drawn between its application to the case of an agent and that of the principal.

That a man may, by his acts or mere silence, become estopped, when third persons have, or may reasonably be supposed to have acted thereon, many cases determine. *Winckley vs. Pye*, 1 *Esp.* 364; 2 *Cowen and Hill's Notes*, 192-204; *Coe vs. Hutton*, 1 *Serg. & Rawle*, 398; *Vincent vs. Huff's Lessee*, 8 *id.* 381-389; *Demeyer vs. Souzer*, 6 *Wend.* 436; *Flower vs. Herbert*, 2 *Vesey*, 326; 1 *Greenleaf's Ev.* 197; *Neale vs. Lambert*, 1 *Esp.* 229.

And that an *authorized agent's* conduct would have the same effect as that of the principal, is too plain a proposition, it seems to us, to need argument.

All the authorities cited under our first point, are applicable here. See also *Story on Agency*, sec. 134, 135.

The court below admits that if Waldo was *authorized* in *fact* so to do, he might in *words* assent to the sale. Then why not by his acts? The question is, was there an assent given? It matters not how it was given.

The answer of the court to our prayer for instruction on this subject, is not so much the declaration and illustration of a principle, as it is an argument upon the facts to the jury, to show that the defendant had not brought himself within the rule contended for.

III. Gray & Co., and hence the defendant, as their agent, had power, under and by the terms of the mortgage itself, to sell all the mortgaged property.

We refer, in this connection, to the mortgage and assignment, and the fact that the mortgage, at the time of the assignment, was delivered by Dowe to Gray & Co.; and also to the fact that they had, by their replevin, settled their right to the possession of the whole of the goods.

Gray & Co. were not the mortgagees of *Dowe*, but of *Ray;* and if Dowe as against Ray could lawfully sell the whole, Gray & Co. could—holding the surplus over $3,900 of the proceeds in trust to the use of Dowe.

*Chester vs. Stevens,* 3 *Denio,* 33, will be cited against us. That decision went entirely upon the ground that the defendant proceeded to sell *after the mortgage debt had been fully paid,* and while the relation of mortgagor and mortgagee existed. The action was brought by the *mortgagor* against the mortgagee. The court say, that after the object of the mortgage

had been fully attained—the mortgage debt, interest and expenses absolutely and fully paid—it served to re-invest the mortgagor with the legal title to the unsold portion of the mortgaged property.

Not so in our case. *Ray*, the mortgagor, is the only person who could stand in the attitude of the plaintiff, in *Chester vs. Stevens*. The entire proceeds of the sale did not *pay the mortgage*.

The sale was tantamount to a foreclosure; and there could be but one foreclosure. We insist it was not only the right, but the *legal duty* of Gray & Co., to sell sufficient of the goods to *pay the whole mortgage debt*. See *Wood vs. Worthington*, 4 *J. J. Marsh*, 174.

IV. The court instructed the jury upon matters of fact, and took from them questions exclusively for their consideration, and unwarrantably commented upon the evidence. This is error, and cause for reversal.

This brief was partially prepared, before the bill of exception was signed; and this point was based upon the charge in its sense as understood by us at the time of its delivery. The charge, as reported by the Circuit Judge for this court, and incorporated in the bill of exceptions, is in a measure stripped of the above objection. It is, however, still applicable.

We cite a few cases to show how carefully appellant tribunals will watch and preserve the true relations between court and jury, and promptly relieve against any interference on the part of the court with the province of jurors. *N. Y. F. Ins. Co. vs. Walden*, 12 *John.* 513; 12 *Mass.* 22; *Merton vs. Fairbanks*, 11 *Pick.* 368; *id.* 140; 6 *Peters' Rep.* 609, 610, 611, 618 619; *Gray's Admrs. vs. Allen*, 14 *Ohio*, 59; *O'Kelly*

*vs. O'Kelly*, 3 *Metcalf*, 439 ; 7 *Wend.* 198; 8 *Cowen*, 406.

V. The judgment in the replevin suit between Gray & Co. and Dowe, was conclusive upon the question of property in the goods. Dowe there litigated his title to property, and he cannot again try the question.

The legal identity of the parties is fully conceded.

The pleadings in that suit show that issue was taken upon the question of property; the plea was *non detinet*, and notice that the goods were the property of defendant.

But the plea of *non detinet* alone was sufficient. The statute expressly declares what shall be put in issue by this plea.

*Rev. Stat.* 614, *sec.* 23—that this plea shall put in issue not only the detention, *but the property of the plaintiff therein.*

And to provide against injustice, in cases where the plaintiff may have but a special property and right of possession merely, sections 35 and 36 are added.

It is evident that the legislature intended that the whole rights of the parties should be adjudicated upon and adjusted.

The act to regulate replevin in justices' courts is very different ; there, they say, nothing but the *right of possession* shall be at issue. *Rev. Stat.* 463, *sec.* 146.

So in other States, where the action of replevin has been regulated by statutory enactments, they have carefully provided for the effect of the judgment. *Rev. Statutes of Mich.* 1836, *sec.* 6, *p.* 525 ; *do. do. Ohio,* 785, 786, *sec.* VI, VII. ; *do. do. Mass.* 668, *sec.* 30 ; *do. do. Vt. Tit. Replevin.*

Dowe 'had an opportunity to try the question of his property in that suit, and to have had judgment under

Dec. Term
1853.

Emmons
vs.
Dowe. sections 35 and 36. He was bound to do so, and the judgment is equally conclusive whether he did so or not. *Le Guer vs. Gouverneur*, 1 *Johns. Cases*, 436 ; *Marriot vs. Hampton*, 7 *D. & E.* 265 ; *Loomis vs. Pulver*, 9 *John.* 243 ; 3 *Cowen & Hill's Notes*, 830–832 ; 5 *Wend.* 71 ; 13 *John.* 302.

The court below held that the replevin had only determined the *right of possession ;* likening it to real actions, where a party may proceed *gradatim*, with his writ of entry, and then his writ of right ; entirely overlooking the distinction between real and personal actions—in the latter of which there are no degrees, but the *whole right* must be settled in a single suit. *Arnold vs. Arnold,* 17 *Pick.* 4 ; *Com. Digest, Action K,* 3.

VI. The garnishee proceedings against Wall concluded Dowe. He was a party to the record. If he had not been summoned as garnishee, he is still a *party* within the legal signification of the term, because of his privity in interest and estate with the parties to that proceeding. He had notice of the pendancy of the writ, and it was defended in his behalf. *Marsh vs. Pier,* 4 *Rawle,* 273–284 ; 1 *Greenleaf's Ev., sec.* 523 ; *id.* 533 ; *Ferrers vs. Arden,* *Cro. Eliz.* 668 ; 3 *Cowen & Hill,* 812–817 ; *Calhoun's Lessee vs. Dunning,* 4 *Dallas,* 120 ; *Cleriac vs. Reinecher,* 2 *Peters,* 621; *Rapelye vs. Prince,* 4 *Hill,* 119.

The judgment in that case was competent evidence to rebut Dowe's allegation of property in the goods. 3 *Cowen & Hill,* 822, 823 ; *Davis vs. Nest et al.,* 6 *C. & P.* 167, (25 *Eng. C. L.* 336); *Floyd vs. Brown,* 1 *Rawle,* 121 ; 4 *id.* 284.

But irrespective of its effect as a judgment between the same parties upon the same subject matter, that

proceeding is a complete answer to this action of trover, upon higher and more substantial grounds.

If Dowe was *not a party*, as he contends, then the judgment has impaired none of his *rights*, and he may seek the goods or their proceeds in whosesover hands they now are. It is sufficient for the defendant here to answer that, whilst the goods were lawfully in his possession, they were taken from him by process of law. *Embree vs. Hanna*, 5 *John.* 101 ; *McDaniel vs. Hughes*, 3 *East.* 367 ; *Foster vs. Jones*, 185 *Mass.* 15 ; *Mayer vs. Foulkrod*, 4 *Wash. Cir. C. Rep.* 503 ; *Perry vs. Chandler*, 2 *Cushing*, 237 ; *Kaley vs. Shed*, 10 *Metcalf*, 317 ; *Squire vs. Hallenbeck*, 9 *Pick.* 551 ; *Rev. Stat.* 590, 591.

*Waldo & Watkins* for defendant in error.

This court should not entertain the case, because

1st. The exceptions do not specify, &c. 23 *Wend.* 316 ; *Simpson vs. Downing*, 17 *id.* 259 ; *Willard vs. Warren*, 15 *id.* 581.

2d. Because exceptions were not taken in time. 7 *Wend.* 31, *Life Ins. Co. vs. Mechanics' Ins. Co.*, and see 9 *Wend.* 241, *Lyon vs. Wakeman*, in which the distinction taken is not such a departure as to render the rule inapplicable to this case.

A party is to be confined to the parts excepted to. 1 *Wend.* 418; 1 *Hill*, 91 ; 1 *Cow.* 622 ; 8 *J. R.* 495.

It cannot well be conceived how Dowe's title could be questioned upon the plaintiff's proof, to that part of the goods which remained after the payment of Gray & Co.'s mortgage debt, (*Charter vs. Stevens*, 3 *Denio*, 33,) and there can be as little doubt that the defendant made conversion of them. *Cow. Treat. vol. I, p.* 320, 221 ; *Chit. on Pl., p.* 170; *Chit. on Pl., p.*

176 ; *Cow. Treat. vol. I.* 326 ; *Chit. on Pl., vol. I, p.* 180 and 187 ; *Cow. Treat. vol. I,* 343, 329, 340, 341 ; 15 *J. R.* 431.

Such property and conversion entitled plaintiff to recover. *Cow. Treat.* 320.

It was claimed by the defendant, that under the plea of the general issue, in replevin, in the detinet, the title to the property was put in issue between the same parties and their privies to this action of trover, and is conclusive of the title in this action.

The provision of the statute, page 613, is to simplify the pleading, not to change the effect of the judgment in the action. A plea of property in the defendant, or a third person is only inducement to the traverse of the plaintiff's title, and the Statute has substituted the plea of the general issue, in place of such averment and traverse. The form of the plea is changed, but the issue is not. Under the statute plea, or plea of property, the issue is not upon the allegation of property in the defendant, but only upon the traverse of the plaintiff's property—*Rogers vs. Arnold,* 12 *Wend.* 35, 38; 1 *Sand.* 22, *Note* 2 ; *Beemus vs. Beekman,* 3 *Wend.* 672 ; which is alone put in issue. *Anstice vs. Holmes,* 3 *Denio,* 244 ; *Wright vs. Bennet,* 3 *Barb.* 451.

A record of judgment upon such an issue or any issue, shows that only to have been tried, which was essential to be tried. All that was essential to be tried upon such issue was the plaintiffs right of dominion, his temporary right of possession of the goods. Such dominion or right of possession is property in the goods, but not absolute ownership. *Arnold vs. Rogers,* 12 *Wend.* 35, 38.

The action of replevin begins by delivering the

possession of property to the person claiming the right of possession and determines afterwards the right of such possession.

But, if it is necessary to prove absolute ownership of property upon the trial, to maintain the possession, more is required than is necessary to give it in the first instance. *R. S.* 591. Wherefore the law is involved in absurdity, and the remedy by replevin deprived of its greatest excellence. While the absolute ownership of the property may have been tried, it does not necessarily follow that it was, and the proof aliunde the record shows that it was not.

It may be argued by the counsel that the finality of this judgment is not the result of the action, but of the quality of the plea and notice, but a plea that defendant was entitled to the possession or that should not traverse the property of the plaintiff, would be bad on demurrer, and the notice was not broader than the plea was without it. *Pattison vs. Adams,* 7 *Hill Rep.* 123 ; *Austin vs. Holmes,* 3 *Denio,* 244.

The garnishee judgment was not for the same subject matter, nor between the same parties or privies with the present case. By reference it will be seen that the garnishee was a proceeding on the part of Loder et al. creditors of Crampton and Osborne against Wall, Dowe and Emmons severally, to reach property, money and credits belonging to Crampton & Osborne. To this proceeding Wall put in his answer, and had judgment been given upon such answer, the subject matter of it perhaps would be made to appear, or had issue have been joined upon such answer perhaps the subject matter of a judgment upon it might be inferred.

But the answer was not satisfactory, and a feigned

issue was awarded. This was an issue under the Statute, page 591, Sec. 36, to try whether Wall had any property, moneys or credits belonging to Crampton & Osborn.

The record of the judgment upon this issue did not show the subject matter of the judgment, and there was no proof aliunde the record to show it. The answer of Wall was not competent for such purpose, because made before issue joined, and if competent would fail to show it, as the judgment must not necessarily have been, nor is it fairly inferable, that it was for the same subject matter with his answer. *Lawrence vs. Hunt*, 10 *Wend.* 80.

But a proceeding in garnishment is a proceeding in *rem et personam*—1 *Greenleaf*, *p.* 692, § 542 ; and if reference be made to Wall's answer, it will be seen that so far as this proceeding was in rem, the avails of the goods and not the goods, were the subject matter of the judgment. By the conversion the res was changed, and the subsequent proceedings, so far as such proceedings were in rem was *rem novam*, and therefore, Dowe was not bound to defend the action as a proceeding in rem.

As a proceeding in *personam* there was no privity between Dowe and Emmons considered in legal identity with Wall and with Gray & Co., because there was no obligation existing between them, express or implied, by reason whereof either should defend the other against a judgment in *personam*.

The title to the goods may have been involved in the garnishment as a proceeding in *rem* or *personam*, but the conversion terminated Dowe's privity, and eo instante, gave him a right of action, and he could not be turned over to defend his title in an action in rem

in which there was no goods to be defended nor be-
tween parties to whom, so far as the proceedings were
*in personam* he was a stranger, and from which he
could derive no benefit by either way of the judg-
ment. 14 *J. R.* 83.

Had possession of the goods been retained, and
notice given to Dowe, the judgment would have been
admissible in evidence between him and the parties
to the record with whom he was in privity, to prove
an eviction, but would then not have been conclusive
upon the title. *Stark Ev. marg. page* 216 *note* 1 ;
*Blasdale vs. Babcock,* 1 *J. R.* 517.

But Emmons was no party to the record. He was
garnisheed, but the case proceeded in severalty, and
Wall was the only defendant of record to the issue
upon which the judgment was had, and though Em-
mons may have had a legal identity with Wall, it
was only an identity *de jure,* not an identity *de facto*
or of record, and Dowe could not therefore be con-
nected with him in privity upon the record, because
Emmons was not himself upon the record. A record
to be admissible, must be between the same parties,
or privies, not between those in identity with a par-
ty and their privies, for a party only by legal identity
with a party of record may be a witness, and it shall
not be allowed a party of record, to have the benefit
of a record wherein he may have been a witness.
*Stark Ev. vol.* 1, *marg. page* 214 ; *Cow. and Hill, notes,
part* 2, *page* 2 ; *id. part* 1, *note* 206 ; *Greenleaf Ev.
page* 673. § 524.

But Emmons, and Gray & Co., not only may have
been a witness, but if reference may be had to Wall's
answer to show the subject matter of the proceeding,
reference may likewise be had to it, to show that Wall

was a witness, and that both were interested that judgment should be had against Wall, if such judgment was to be conclusive in this action, which proves that by the conversion Dowe was no longer in privity of interest with Wall or Emmons, or Gray & Co., for while they would gain by such judgment, Dowe would lose, and privity of interest doth not run so contrary-wise—so contrary-wise that the privity of this defendant would seem with the plaintiff in the garnishee, rather than with the plaintiff in the action.

It is noticeable that the garnishment was in behalf of the creditors of Crampton & Osborne, from a recovery in which it would not follow that the goods were Crampton & Osborne's, as against Dowe, but as to their creditors only. And herein is the fallacy of the defence, that a recovery in behalf of the creditors, determines Dowe's want of title to the goods. It does so, only as to the creditors, but any conversion made is not cured by judgment, such as this had afterwards, for it does not show Dowe's absence of title, but a relative want of it, and *non constat* from such judgment that Dowe had not valuable interest beyond the judgment whereof there was wrongful conversion.

It were hard that the goods should be twice paid for, and if such was the result of the principles suggested, their accuracy would be questionable. But the law cannot help the folly or indiscretion of men, and if the defendant can discover an error in the improper or untimely conversion of the property, he will not complain of the law for protecting the plaintiff only against the loss from the consequences of it.

The garnishee proceeding is contrary to the Constitution, Article 1, Sec. 5. The question of agency was properly submitted to the jury.

- *By the Court*, CRAWFORD, J. The goods, to recover

the value of which this action was instituted, were sold by Crampton & Osborne to the defendant in error, who afterwards sold them to James M. Ray, Jr.; and to secure the payment of certain drafts and notes given by Ray to Dowe, as the consideration for the goods, a chattel mortgage was executed upon the same goods by Ray, whereby the mortgagee, Dowe, was empowered, at any time that he should deem himself in danger of losing his debt against Ray, to take possession of the mortgaged goods, and after such notice as the law directs to be given in cases of constables' sales, to sell and dispose of the goods, and out of the proceeds of such sale to reserve and take the amount due to him by Ray, with interest thereon, and refund the residue to Ray. At the time of the sale to Dowe by Crampton & Osborne, that firm was indebted to the firm of John A. C. Gray & Co., and to satisfy this indebtedness, one of the drafts which had been given to Dowe by Ray was assigned to Gray & Co., namely: a draft for three thousand nine hundred dollars, drawn by Garrison & Fritz, of Panama, on Martin Oliver & Co., of New York, payable to the order of James M. Ray, Jr., eight months after date. As a security for the genuineness of this draft, Dowe assigned to Gray & Co. so much of the mortgage given to him by Ray as would secure the payment of the draft; or, in other words, he transferred to Gray & Co. three thousand nine hundred dollars of the indebtedness secured by the mortgage, "with priority of payment."

This assignment was endorsed on the mortgage, and bears even date with it. Within a few days it was discovered that the draft assigned to Gray & Co. was

DEC. TERM
1853.

Emmons
vs.
Dowe.

not genuine, and thereupon they commenced an action of replevin against Dowe to recover possession of the mortgaged goods, in the District Court of the United States for this district; in which action the law firm of Emmons & Van Dyke were attorneys for the plaintiffs. There was a trial by jury of the issue joined in the replevin suit, which was upon a plea of *non detinet*, accompanied by a motion that the property was in the defendant Dowe; and the jury found that the defendant "did unlawfully detain the goods," &c.; upon which finding, the District Court rendered a judgment for the plaintiffs, that they should "have and retain the goods and chattels and property mentioned and described in the declaration," and which had been delivered to them on the writ of replevin. By the direction of the plaintiff in error (Emmons), acting as attorney for Gray & Co., the goods were removed by the United States marshal from the store formerly occupied by Crampton & Osborne, to the auction store of Caleb Wall, in the city of Milwaukee; and while they were in the possession of Wall, a proceeding by attachment was instituted in the United States District Court, by Cyrus W. Loder and others, as plaintiffs, against Crampton & Osborne, defendants, in which proceeding Wall, Dowe and Emmons were summoned as garnishees. After Wall was served with the garnishee process, and before he made answer, he proceeded to sell all of the goods at auction, by direction of Emmons; and upon his (Wall's) disclosure as garnishee, an issue was made up in the District Court, between the plaintiffs in the attachment proceeding (Loder and others) and Wall, which was tried by a jury, and resulted in a verdict and judgment against Wall, as garnishee, for the sum of one

thousand eight hundred and ninety-five dollars and costs. This judgment was satisfied by Wall out of the proceeds of the goods.

It appeared that while Wall had possession of the goods, several communications took place between Mr. Emmons, as attorney for Gray & Co., and Mr. Otis H. Waldo, who professed to act as the attorney for Doctor Dowe, in relation to the sale of the whole stock of goods; and it was claimed by the plaintiff in error, that when he had caused enough of the goods to be sold to satisfy Gray & Co.'s debt and costs, the sale was stopped, and that it was only in consequence of an arrangement with Mr. Waldo, as Dowe's attorney, and for the benefit of Dowe, that the whole goods were sold. The amount realized from the sale was $6,200, and the price agreed upon between Crampton & Osborne and Dowe, when the latter purchased the stock, was $9,000.

The several errors insisted upon in this case will be disposed of by enquiring, 1st, into the effect of the verdict and judgment in replevin in favor of Gray & Co., and against Dowe; 2d, as to the effect of the judgment in the garnishee proceeding in favor of Loder and others, and against Wall, so far as it could affect Dowe; and 3d, whether, under the assignment of the mortgage, or a portion thereof, to Gray & Co., they were authorized to dispose of any more of the goods than became necessary to the payment of the debt of Gray & Co., and herein of the power of Waldo to bind or affect Dowe by his acts.

1. As to the effect of the verdict and judgment in replevin. It is contended by the plaintiff in error, that in the replevin suit the defendant Dowe, (who is plaintiff in the present action of trover,) interposed

x

a plea of *non detinet,* which, under section 23, of chapter 119, of the Revised Statutes, put in issue the property of Gray & Co. in the goods; and that the notice appended to the plea, that the goods were the property of Dowe, enabled the latter to give evidence of his right and title to the goods, under section 24, of chapter 119, of the Revised Statutes, and that the judgment in the replevin suit must conclude Dowe as to their respective rights in the goods. In replevin, whether it be in the *cepit* or *detinet,* the principal matter in issue is the *plaintiff's property in the goods.* *Rogers vs. Arnold,* 12 *Wend.* 30–34 ; 1 *Chitty's Pl.* 163. If the action be in the *cepit,* the general issue, *non-cepit,* admits the property to be in the plaintiff, and only denies the taking ; and hence it is necessary, if the plaintiff's property in the goods is sought to be controverted, to interpose a special plea of property in the defendant, or a third person, traversing the plaintiff's claim of property ; and if the action be in the *detinet,* the general issue, *non-detinet,* like the same plea in the common law action of *detinue,* traverses the plaintiff's right to the property, or to the possession, and also the detention of the goods by the defendant. *Vide R. S.,* chap. 119, *sec.* 22, 23 ; 1 *Chitty's Pl.* 164 *and note* 3, 499, *note* 1, 488.

On the issue joined on the plea of *non detinet,* Dowe could introduce evidence of title in himself, *inconsistent* with that of the plaintiffs in replevin, without regard to his notice of such matter of defence, because such evidence would be contrary to, and would tend to disprove the plaintiff's averment of title in himself, which he must aver and prove in order to recover ; but under the plea of *non cepit,* without a special plea or notice of property in the de-

fendant, such evidence would be inadmissible. The
plea of *non detinet* in the District Court, necessarily
put in issue the property of Gray & Co. in the goods,
and without proof of such property, they should not
have obtained a judgment in their favor. But this
property in the goods does not necessarily imply an
absolute and exclusive *ownership*, because, if it were
otherwise, no person except the owner of property
could maintain replevin for them, where they are
wrongfully detained, and we all know that this form
of action is intended and used by persons having a
*special property* in goods, the absolute ownership of
which is in another. Such a right would be sufficient
in trover or trespass (1 *Chitty's Pl.* 151, 168–9);
and our statute (*chap.* 119, *sec.* 2) gives an action of
replevin in all cases where an action for personal
property, wrongfully taken, can be maintained. Right
to the possession and dominion of the goods and chat-
tels for the time, is all that is essential. *Rogers vs.
Arnold,* 12 *Wend.* 36.

Looking into all the facts of the case, it is not to be
doubted that the only right which could have been
determined between the parties to the action of re-
plevin, was that secured to Dowe by the mortgage,
and by him assigned to Gray & Co., to the extent of
their debt. Now this was only a right to possess and
dispose of the goods, until the amount due to them
was realized, and thus their priority in payment se-
cured ; but after this was done, Gray & Co. could
have no right to the possession or control of any por-
tion of the goods which remained after their debt
was satisfied, so that the right of possession and dis-
posal which may have enabled them to recover in re-
plevin, would cease and determine, by the satisfaction

of their demand by a sale of enough of the goods for that purpose, before the commencement of the present action of trover.

It is not to be denied, that any matter that has been once judicially settled and determined, cannot again be the subject of controversy between the same parties or their privies. *Nemo debet bis vexari, pro uno et eodem causa.* "The judgment of a court of concurrent jurisdiction, *directly upon the point*, is as a plea, or bar, or as evidence conclusive, between the same parties, upon the same matters directly in question in another court." *Duchess of Kingston's case,* 20 *Howell's,* 538 ; *Etheridge vs. Osborne,* 12 *Wendell,* 399 ; *Young vs. Black,* 7 *Cranch,* 567. But although a former judgment is generally taken to be *prima facie,* conclusive as to all questions which could be determined under the pleadings, yet this may be rebutted by clear evidence of a contrary character, as where a particular subject is shown not to have been in fact embraced in the former decision. *Goodard vs. Selden,* 7 *Conn.* 521.

The former verdict is " conclusive as to the subject matter of the suit, and any matter particularly put in issue, and *found by the jury*. And it will not be competent for a party in any other action to deny or plead anything to the contrary of what has been so found and adjudicated." *Arnold vs. Arnold,* 17 *Pick.* 4–9. In the same case, the learned judge (Putnam), in his opinion (p. 13), says: "We must therefore ascertain in every case, when judgment in a former action is pleaded in bar, precisely what was judicially settled in the former action, and what was the cause of that action, and what is the cause of the action to be tried." The rule that the operation of the *estoppel*

must be confined to the particular subject matter de-
cided in the former suit, is ably discussed by Lord El-
lenborough, in the case of *Outram vs. Morewood*, 3
*East.* 346 ; by Mr. Justice Marcy, in *Jackson ex dem.*
*Genet vs. Wood*, 3 *Wend.* 27 ; and by Chief Justice
Parker, in *Standish vs. Parker et al.*, 2 *Pick.* 20 ; in
the notes to which last mentioned case will be found
a collation of cases upon the subject. We must there-
fore look to the record of the proceedings in replev-
in, in the District Court, to find what was *found and
adjudicated* in that case, in order to determine how
far the plaintiff in the present action (Dowe) was es-
topped or concluded by it ; for it is laid down by
Lord Coke (*Coke on Litt., vol.* 3, *p.* 432) that "when
the verity is apparent in the same record, then the
adverse party shall not be estopped to take advantage
of the truth ; for he cannot be estopped to allege the
truth, when the truth appeareth of record."

Now the verdict of the jury in the replevin suit
only found that the defendant " did unlawfully detain
the goods," and was entirely silent on the subject of
property or ownership ; and the judgment rendered
by the court only decided the right to *retain* the
goods. How can we conclude from this verdict and
judgment that the *ownership*, or subsequent right to
possession, or control of these goods, or anything be-
yond the mere right to *retain or possess* the goods at
that time, was adjudicated or settled thereby ? If the
plaintiff in that action was satisfied with such a verdict
and judgment, we are not at liberty, in this case, to
review or interfere with it, but we must ascertain the
precise matter decided as it appears by the record.

Most certainly the verdict in replevin did not em-
brace the whole issue submitted, for it did not find in

DEC. TERM
1858.

Emmons
vs.
Dowe.

whom the property was, and an unlawful detention by the defendant by no means establishes the right of property in the plaintiffs. As was said by Chancellor Walworth, in *Bemus vs. Beckman*, 3 *Wend.* 672, "this finding may be true, and yet the title might be in some person other than the plaintiff." So also in *Boynton vs. Page*, 13 *Wend.* 425, where the verdict in replevin was that the defendant " did take and detain the goods." Mr. Justice Sutherland says, " this verdict is undoubtedly defective, and leaves the question of title to the property undisposed of."

We think the learned Judge who tried the case, correctly understood and expounded the effect of the verdict and judgment in replevin, and that the right of possession at that time merely, was adjudicated, leaving the question of property entirely untouched· Hence the plaintiff in this action was not precluded from showing such right in the goods as would enable him to maintain his action.

2. As to the effect of the judgment in the garnishee proceeding in favor of Loder and others, and against Wall, so far as it could affect Dowe. It is true that Dowe was a party to the record in that proceeding, having been summoned as a garnishee of Crampton & Osborne, but it is not true that he was a party to the issue joined and tried between Loder and others, the plaintiffs, and Wall, his co-garnishee. Under section 36, of chapter 112, of the Revised Statutes, an issue made up between Loder *et al.* and Wall, the answer of the latter, as garnishee, not having been deemed satisfactory by the plaintiffs. The trial of this issue resulted in a verdict and judgment against Wall ; but what the evidence submitted to the jury was, or whether any except the garnishee's answer, or what

the nature of Wall's indebtedness to Crampton & Osborne was, did not appear on the trial below. *Non constat* that Wall was not indebted to Crampton & Osborne, or had property of theirs in his hands, independent of any transaction in which Dowe had an interest.

It did not appear whether Emmons or Dowe had been called upon to answer as garnishees, and we do not see how either of these garnishees ought to be concluded by a judgment against the other. Neither was examined as a witness, nor had either a right to examine witnesses in the trial against Wall. In fact, they may be considered as much strangers to the verdict and judgment against Wall as if they had never been summoned as garnishees at all. Suppose that the plaintiffs in the attachment proceeding had not summoned Dowe as a garnishee, but had proceeded against Emmons and Wall, could it be claimed that Dowe would be estopped? We think not, because he would not be a party to the case, and he could not be deemed a *privy*. So far as Wall could claim any right to the possession of the goods, he was not in privity with Dowe, because the claim of the latter was adverse to that of Gray & Co., through whom Wall claimed. It is true, the question may have been whether the goods or their proceeds, in Wall's hands, were the property of Crampton & Osborne or of Gray & Co., under whom Wall claimed; and if that were shown to have been the question upon which Wall's liability was determined, it might give rise to an *estoppel* as against Gray & Co., because here there is a privity; but we are at a loss to discover why Dowe could not, in another suit, establish a right to the goods paramount to that set up by either Crampton

& Osborne's creditors, Gray & Co., or Wall, if such were the fact.

But we cannot tell from the record of the garnishee proceeding, nor from the evidence in the Circuit Court what the judgment against Wall was based upon, whether for the goods in question, placed in his hands by Emmons, and determined or found to be subject to the payment of Crampton & Osborne's creditors, or whether it was for other goods or property of Crampton & Osborne in Wall's hands, with which neither Gray & Co. nor Dowe had any connection, and in the absence of all evidence on this subject, we think the proceeding against the garnishees must be taken to be in severalty against each, and a judgment against one of them ought not and cannot operate as an estoppel against either of the others.

From the view which we have taken of the case thus far, it follows that nothing appeared from the record of the replevin suit, nor from the garnishee proceeding, which could preclude Dowe from asserting his right to the goods in the present action ; and it remains to enquire whether under the assignment of a portion of the mortgage, with a right of priority of payment to Gray & Co., they were authorized to dispose of any more of the goods than became necessary to the satisfaction of their claim of $3,900 and expenses ; and in this connection, whether the acts of Waldo, as agent or attorney for Dowe, were such as to affect Dowe.

The power to take possession of the goods at any time, and to dispose of them after a certain notice of sale, conferred upon the mortgagee, Dowe, by the terms of the mortgage, was transferred by the assignment to Gray & Co., so far as it was necessary to en-

Dec. Term
1853.

Emmons
vs.
Dowe.

able them to realize their debt by a sale of the goods, and if it required the disposition of the whole goods to make the amount, they could dispose of the whole, because they had a priority in payment secured to them ; but when the object of the assignment was accomplished, when the debt of Gray & Co. with the expenses incurred by them in the sale had been satisfied, if any portion of the goods remained unsold, Dowe was entitled to a return of them, and Gray & Co. could have no just claim to them.

It has been insisted by the plaintiff in error, that by the assignment to Gray & Co. they became the mortgagees of Ray, and it was their *duty*, under the power of sale, to sell the whole goods, or so much thereof as would pay the whole mortgage debt. We cannot believe that this is a correct principle. There is nothing in the assignment that would show an intention on the part of Dowe to relinquish his right to possess and dispose of whatever of the goods would remain after the payment of Gray & Co.'s debt. The assignment to them was only of a part of the mortgage debt, and to that extent they may be said to have become the mortgagees of Ray; but what became of the residue of Dowe's interest in the mean time? So far as that residue was concerned, Dowe continued to be the mortgagee of Ray, and responsible to him, after the whole mortgage debt should be paid, if any surplus remained.

The transfer of any distinct part of the indebtedness secured by mortgage, carries with it the mortgage *pro tanto*, and a satisfaction of such part extinguishes the mortgage, so far as it pertains to the part so transferred and satisfied, leaving it operative in regard to the amount remaining unpaid.

When Gray & Co. realized their claim, they had no right to retain the surplus goods for any purpose, because their interest was extinguished. Ray was not entitled to such goods, because the whole mortgage debt was not satisfied, and Dowe still held the unsatisfied part of the debt to which the mortgage was incident, and by virtue of the mortgage, and under the terms of his assignment, he alone was entitled to the surplus goods, after the payment of Gray & Co.'s claim. If, thereafter, the goods were sold by the plaintiff in error under his direction, as the attorney of Gray & Co., such sale would be a conversion of the goods.

The case of *Charter vs. Stevens*, 3 *Denio*, 33, bears a strong analogy to the present case. There, the mortgagee of certain personal property, after default in payment of the mortgage debt, took possession of the property, and proceeded to dispose of it to satisfy the amount due. Among the property was a horse, which was sold, together with all the property, at auction; but before the sale of the horse, enough had been realized from the sale of other parcels of the property to pay and satisfy the amount due to the mortgagee. The mortgagor brought an action of trover for the property; but on the trial, he confined his claim to recover to the value of the horse sold. After a verdict for the plaintiff, a motion for a new trial was made, and in refusing to allow a new trial, Mr. Justice Beardsley, in speaking of the mortgagee having sold enough of the property to realize his debt, before he sold the horse, says:

"This he had a right to do; but when his debt was thus paid, all right to the residue of the property was necessarily extinguished, and the power to sell became,

*ipso facto*, void. For what honest purpose could the Dec. Term 1858. mortgagee claim any right to the property then remaining unsold, or proceed further under the power to sell? His debt was paid."

Emmons vs. Dowe.

It is urged by the plaintiff in error, that *Charter vs. Stevens* is not in point, because, in that case, the action was by the mortgagor, and the whole mortgage debt had been paid before the sale of the horse, while, in the present case, the relation of the parties is different, and the whole debt secured by the mortgage was not satisfied by the sale of the goods. The distinction thus sought to be established is more specious than sound. The only right to interfere with any portion of these goods by Gray & Co., or their attorney, was that acquired by the assignment of a portion of the mortgage debt, and their control of the goods could only extend to the payment of that portion of the debt, and when this was accomplished, their control of the property, and their power to sell any other portion of it, was terminated. It could be no answer on their part, that the *whole* debt was not paid, for this was none of their concern. Such an answer might be apt to Ray; but so far as Dowe was interested, he was the sole person in whom the control of the goods remained, and he yet held the right to dispose of them until his debt also should be paid, and neither Ray nor Gray & Co. could deprive him of it. But it was claimed by the plaintiff in error, that he was justified in causing all of the goods to be sold, because Mr. Waldo, as the agent of the defendant in error, assented thereto, and authorized the sale; and if the agent had authority in the premises, it is unquestionably true in law that his acts would bind his principal, as fully as would

the acts of the principal himself. For instance, if the agent had full and absolute control in the disposition of the goods, and assented to their being sold, by agreeing verbally or in writing, that the sale might be made, or if he stood by, and, without objection, permitted others to take control and dispose of the goods, the law, in the first case, would consider his consent to the sale equivalent to the consent of his principal, and in the other case, his conduct in silently allowing another party to exercise control over the goods, inconsistent with the right or title of his principal, upon which tacit permission that other party has acted, and the retraction of which tacit permission would do an injury to the third party acting upon it, would conclude the principal as effectually as if he (the principal) had been present, and had himself acted. "*Qui facit per alium, facit per se.*" An estoppel *in pais*, or by the conduct of a party, may, for this reason, be created as effectually by the acts or conduct of the agent as by those of the principal; for the agent is esteemed in law but the medium through whom the principal acts.

It is important, however, that the doings of the agent should be within the scope of his authority; for if not necessarily embraced within the authority given to him, his acts or conduct will not affect his principal. It is true, there are some exceptions to this general rule, where the agency is general, and the acts are not in strict conformity to the authority, yet binding; but it is not necessary to discuss the distinction at present. The authority of an agent may be expressed or implied, general or special; but in all cases, the power to act must be ceded to, or conferred on him in some manner, and the party who

avails himself of the act of the agent, must prove the

authority under which the act is done. *Paley on Agency*, 309.

In some cases, where the authority is given by power of attorney, or where it must be in writing, the instrument should be produced ; but in other cases, it is enough if it be shown that a parol authority was given, or that the principal had permitted the agent to act in that capacity, and has recognized him as such agent. Where the agency sought to be established is a particular instance, it must be shown that authority was given in some form.

In the case of *Lightbody vs. North American Ins. Co.*, 23 *Wend.* 18, to which we have been referred, Hayner was the general agent for the insurance company, and in the particular transaction, acted within the general scope of his authority in taking risks. The existence of an authority to act was not denied ; but the extent of that authority, and whether it empowered him to take the risk in question, was disputed ; and upon this, Mr. Justice Bronson says : "The question is not so much, what authority the agent had, in point of fact, as it is, what powers third persons had a right to suppose he possessed, judging from his acts, *and the acts of his principals.*" Of course, the acts of recognition of the principals, would be as valid, as authority, as would be an express concession of power ; but the case does not hold that in the absence of these acts of recognition, the power of the agent was to be judged of by third persons by his acts, and the learned judge evidently had reference to the *particular* powers possessed by the agent, and whether really they embraced the issuing of the policy sued upon or not, an authority of some

kind being conceded in a former part of his opinion.

Mr. Justice Cowen, in the case of the *North River Bank vs. Aymar*, 3 *Hill*, 265, in the examination of the subject of agency, and of cases in which the improper exercise of the delegated power by the agent will nevertheless bind the principal, assumes throughout, that an authority of some description has been given or recognized, and then proceeds to discuss the effect of it.

Chief Justice Savage, in *Andrews vs. Kneeland*, 6 *Cowen*, 357, and afterwards in *Rossiter vs. Rossiter*, 8 *Wend*. 498, comments on the powers of an agent, but takes it for granted, in every instance, that the relation of principal and agent does in fact exist. So, also, in *The Commercial Bank of Buffalo vs. Kartwright*, 22 *Wend*. 360, Senator Verplanck says:

"Bartow, as appears in the evidence, was entrusted by Barker with the certificate of this stock, for the purpose of borrowing money on its security. The certificate was accompanied with such an authority to transfer (now presuming that authority to be valid) as would hold out Bartow to any one to whom he might apply for a loan, in the character of an agent, having full right to transfer, or to substitute some other person as the attorney for that purpose. The precise use Bartow was expected to make of the stock and the different use he may have actually made, were nothing to the purpose, as against those who acted upon the faith of the general authority entrusted to the holder of the certificate," &c.

He then cites a passage from *Story on Agency*, to the effect that when an agent is held out to the public as such, his acts will bind the principal, although

he may depart from secret instructions in dealing
with third persons. This is incontrovertible; but
here, again, we find the fact of *authority* existed.

Mr. Phillips, in his work on evidence (p. 103),
says : " The *fact* of the agency must be first established
before the declarations of a *supposed* agent can be re-
ceived. In *Scott vs. Crane*, 1 *Conn. R.* 255, to let in
proof of the acts or concessions of an agent, it was
held necessary that the agency should be first proved.
This might be proved in a variety of ways, as, for in-
stance, by showing his acts as agent for the same
principal, in other and contemporaneous matters, from
which a general authority might be inferred.

Judge Story says : " If a person should authorize
another to assume the apparent ownership or right
of disposing of property in the ordinary course of
trade, it will be presumed that the apparent authority
is the real authority. *Story on Agency, sec.* 93. The
application of this sound rule of law in the present
case would be, that if Dowe had given authority to
Waldo to assume or pretend that the property was
at his control, and subject to be sold, or otherwise dis-
posed of by him (Waldo), it would make no differ-
ence, so far as third persons were concerned, that
Dowe had not in fact, or in reality, given Waldo any
such power, because, by his own act in such a case,
Dowe would have enabled Waldo to impose upon in-
nocent third persons, and whenever the principal or
third parties must suffer, under a state of case like
this, of which we now speak, the law very properly
confines the evil consequences to the principal, who,
by his acts, gave the agent an opportunity to practice
his deception. *Story on Agency, sec.* 56, 127, 443.
But before any liability could attach, there must be

Dec. Term 1858.

Emmons
vs.
Dowe.

*authority* to do something shown, and in the case put by Judge Story, the authority given was to assume apparent ownership, after which will follow the construction of the law, to be put upon the acts of the agent thus apparently clothed with the *indicia* of property.

In the case of *Williams et al. vs. Mitchell,* 17 *Mass.* 98, the goods were purchased by one Allen, by means of an order over the signature of the defendant, which was shown to be a forgery. The plaintiffs had refused to let Allen have the goods without an order, and afterwards Allen presented the forged order and obtained the goods. The defendant was a merchant at Bridgewater, and it was shown in evidence, and found by the special verdict in the case, that Allen was the general agent of the defendant for the purchase of merchandise, at the time the goods were delivered. Chief Justice Parker, in giving the opinion of the court, holds that the defendant was liable, inasmuch as Allen was a general agent, and says: "They (the plaintiffs) trusted to the fact of authority rather than to the evidence of it."

On the subject of Waldo's agency, the circuit judge charged the jury that it was their duty to examine the evidence "carefully, and determine whether Waldo was so permitted or authorized to act by Dowe, and so become his agent for the sale of the goods. If you do not find that he was so authorized to act, then any direction or permission which he may have given to sell the goods, no matter how express or explicit, would not bind Dowe. But if he was *in fact authorized* by Dowe to sell the goods, then any agreement or direction on his part would be the agreement or direction of the principal, and would bind him."

The question of power was thus submitted to the
jury, and we can discover nothing objectionable in
the charge so given.    It was left to the jury to find a
*permission or authority* to the agent, and the language
afterwards used—" but if he was in fact authorized
by Dowe "—is not deemed by us improper, nor could
it mislead the jury : it was equivalent to telling them
that if, Waldo *really* had authority, either express or
implied, from Dowe, to act as his agent, then his acts
would bind Dowe.    This was correct ; and, indeed,
the whole charge on the subject of the agency of
Waldo, is a correct and concise exposition of the law
applicable to that branch of the case.

From the bill of exceptions, we find that immedi-
ately after the charge had been given to the jury, the
plaintiff in error excepted to certain portions of the
charge, which exceptions were noted, and that on the
morning of the next day, at the opening of court,
and before the jury had given their verdict, by the
consent of the court, a further exception was taken
to the whole charge.    We have not felt ourselves
called upon in the present case, to say whether the
plaintiff in error should be confined to the particular
exceptions taken and noted when the jury were
charged, or not, having preferred to examine the
points which we deem important, and properly pre-
sented by the whole case ; but we take occasion to
say, that the particular exceptions relied upon ought
to be distinctly set forth in the bill of exceptions, as
having been taken at the trial, and if the exception
relate to the charge of the court, it should be taken
at such time as would afford to the court who tries
the case, an opportunity of correcting any mistakes
or errors which it may be satisfied of, by giving the

Y

proper instruction to the jury upon the point excepted to.

The rule of damages in this case is, or ought to be, the value of the surplus goods sold by Wall, after the amount of Gray & Co.'s demand and expenses had been realized. The whole goods were sold for $6,200 by Wall; but it is not shown by the evidence contained in the bill of exceptions, what amount of goods were sold to satisfy the claim of Gray & Co., nor what the value of the surplus goods really was. That the stock was sold for a considerable sum below the price paid to Crampton & Osborne (or agreed to be paid) by Dowe, is apparent, but whether the depreciation was occasioned or suffered in the sale of that portion of the goods sold to satisfy Gray & Co., or in the sale of the residue, is left to conjecture.

It may be that the judgment rendered against Mr. Emmons is exorbitant and oppressive; and if this be the case, and were we furnished with the opportunity of relieving him, we would very promptly do so, but there seems to have been no instruction upon this subject of damages asked for by the defendant, and as we do not know what the charge of the court below was in this respect, we must presume it was correct and proper, inasmuch as no error is predicated upon it.

Upon the whole, we are of the opinion that there is no error in this case, and the judgment of the Circuit Court is therefore affirmed.